UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN DARBY MCDONALD,

                Plaintiff,

    v.

SARA KARIKO, et al.,

                Defendants,

CASE NO. C19-1998-RSL-MAT

ORDER RE: PENDING MOTIONS

Plaintiff proceeds pro se and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. This Order addresses several motions now pending in this matter. (Dkts. 43, 50, 55.)[1] Having considered those motions, any documents filed in support and opposition, and the remainder of the record, the Court finds and concludes as follows:

(1)    Defendant filed a Motion for Sanctions. (Dkt. 43.) Federal courts possess inherent authority to "fashion an appropriate sanction for conduct [that] abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S.Ct. 1178, 1186, 197 L.Ed.2d 585 (2017). This inherent authority includes the ability to impose sanctions with a finding of "bad faith or conduct tantamount to bad faith[,]" *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001),

---

[1] Two other pending motions (Dkts. 41 & 58) will be separately addressed.

ORDER
PAGE - 1

and applies to parties proceeding pro se, *see, e.g., Johnson v. Wang*, C16-1738-JLR, 2018 WL 3656260 at *2 (W.D. Wash. Aug. 2, 2018) ("The court does not simply disregard a party's *pro se* status when considering sanctions, because a *pro se* party 'should not be allowed to willfully and in bad faith interfere with the court's ability to manage its docket and resolve litigation expeditiously[.]'") (quoted and cited cases omitted).  The Court's inherent power to control its docket includes the power to strike an item from the docket as a sanction for litigation conduct. *Ready Transportation, Inc. v. 4AR Manufacturing, Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

The Local Civil Rules (LCR) prohibit "prejudice and bias in any form" both inside and outside the courtroom and call for fair and equal treatment of all participants in the court process. LCR 1(d).  "The duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias toward another on the basis of categories such as gender, race, ethnicity, religion, disability, age, or sexual orientation." *Id.*

In his filings, plaintiff repeatedly runs afoul of the duty to be respectful and the prohibition on bias and prejudice through the use of a racially derogatory term for his former counsel, Darryl Parker, and his personal attacks on and accusations against counsel for defendants, Assistant Attorney General Timothy Feulner. (*See, e.g.*, Dkt. 39 at 1 ("Maybe it [was] sent [] to the attorney he fired after finding out that he and Mr. Feulner were in cahoots with each other.  His attorney was Darryl 'Buckwheat' Parker."); Dkt. 41 at 1, 4 ("He had to fire Buckwheat Barker, after he discovered both he and Feulner were working together."; "This information is relevant to show why [plaintiff] fired Darryl Parker for colluding with Feulner to sabotage this case.  Buckwheat knew better, but did so anyway."); Dkt. 44 at 4, 6 ("This is like Mr. Parker telling the plaintiff that Mr. Feulner is a sissified fruitcake and pencil neck beta-fairy, and plaintiff is filing suit in Mr.

ORDER
PAGE - 2

1  Feulner's behalf."; "Moreover, Feulner is jealous that Buckwheat gave the plaintiff his own
2  personal cell phone number."); Dkt. 47 at 3-4 ("Mr. Feulner is the one who is personally
3  responsible for the current tenor of today's black lives matter.  If it was not for people like him,
4  and his white privilege, northern democrats would not of brought slavery into existence, due to the
5  sins of his forefathers, he must be held accountable[.]"; "Feulner is no longer 'allowed' to oppress
6  the black.  Now, he has chosen another 'enemy', terminally ill white people who have a shaved
7  head, who he can claim are KKK or Nazis, even though he has no, none, ever [security threat group
8  (STG)] affiliations."))[2]  Plaintiff's contention the term he used in relation to Mr. Parker has no
9  racial overtones and refers to a famous jazz musician is not supported and not credible.  (*See* Dkt.
10 51.)  Nor is this the first occasion on which plaintiff has faced sanctions for the content of his court
11 filings or other abusive practices.  (Dkt. 52, Ex. 1 (*McDonald v. Edwards*, C13-0222-SAB, slip
12 op. (Dkt. 123) (E.D. Wash. Sep. 18, 2014) (dismissing complaint and denying pending motions to
13 compel upon finding motive in pursuing case suspect and noting requests for irrelevant and
14 inadmissible evidence and pleadings "filled with fanatical, outlandish, and farfetched
15 allegations")), and Ex. 2 (*McDonald v. Lauren*, C17-5013-RBL, slip op. (Dkt. 98) (W.D. Wash.
16 Dec. 21, 2017) (noting prior warning to "refrain from name-calling and personal attacks," and
17 striking document "calling members of the Department of Corrections 'Sex Freeks [sic],' a 'Dope
18 Fiend,' a 'Horn Dog,' as well as Nazis and member of the KKK.")))

19 Defendants request that the Court, at minimum, sanction plaintiff by striking documents

---

[2] Plaintiff also repeatedly alleges, among other things, that Mr. Feulner personally committed or arranged for plaintiff's "medical homicide", "deliberately had his employees delay, procrastinate, stymie and frustrate all attempts for this plaintiff to start any type of cancer treatment or pain management", and told a doctor to misread an MRI to show plaintiff did not have cancer.  (*See, e.g.*, Dkt. 41 at 3, Dkt. 45 at 5-6, and Dkt. 50 at 2; *see also* Dkt. 50 at 1 ("[Plaintiff] is proceeding before a bias [sic], prejudicial, hateful magistrate who hates DOC inmates who are terminally ill with cancer, which the DOC suppressed so that it would become fatal."))

ORDER
PAGE - 3

containing offensive language and admonish plaintiff not to engage in such behavior in the future. They also suggest a small monetary sanction in the amount of $25.00 given the fact plaintiff has been sanctioned in the past for abusive filings.

Defendants' Motion for Sanctions (Dkt. 43) is GRANTED in part and DENIED in part. The Court agrees sanctions are warranted, but declines to enter a monetary sanction in light of plaintiff's medical condition and his representation he is not functionally normally due to pain from cancer and associated treatment.  The Clerk is directed to STRIKE from the docket (or otherwise document as stricken) plaintiff's response to defendants' motion for extension of time and "notification he has no idea what counsel is talking about, and that he has less than 6 months to live" (Dkt. 39), the accompanying declaration (Dkt. 40), the reply to motion for sanctions (Dkt. 44), and addendum to plaintiff's reply to motion for sanctions (Dkt. 47).  Although plaintiff's motion for a preliminary injunction also contains inappropriate and sanctionable language (*see* Dkt. 41), the Court declines to strike that motion or any related filings in the interest of resolving the issues raised on the merits.

**Plaintiff is further prohibited from filing documents with the Court containing offensive language, name-calling, or personal attacks.  If plaintiff fails to comply with this directive or other applicable rules, the Court may strike and decline to consider non-compliant documents, including those raising issues on the merits, and may order additional sanctions, including monetary sanctions and/or a recommendation of dismissal**.

(2)     Plaintiff filed a Motion for Reconsideration. (Dkt. 50.)  Motions for reconsideration are disfavored and will be granted only upon a "showing of manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence."  LCR 7(h)(1).  Plaintiff seeks reconsideration of an Order granting

defendants' request for an extension of the deadline for filing dispositive motions. (Dkt. 46.) The Court granted the motion for an extension based on, among other factors, an increase in defense counsel's workload caused by the COVID-19 pandemic and several unexpected deadlines. (*Id.* at 1-2.) Because plaintiff fails to show manifest error or new facts or legal authority entitling him to relief under LCR 7(h), his motion for reconsideration (Dkt. 50) is DENIED.

(3) Defendants filed a Second Motion for an Extension. (Dkt. 55.) Specifically, defendants request an eight-day extension of the dispositive motion deadline to allow for counsel for defendants to finalize a motion for summary judgment and accompanying declarations necessary to fully develop the record in this case. Counsel attests to the need for the extension based on difficulties associated with his workload, the remote work environment necessitated by the COVID-19 pandemic, and significant logistical and technology issues related to a statewide security incident that arose shortly after his first request for an extension of the Court deadline. (Dkt. 56.) Because the Court finds the request for an additional, brief extension of the dispositive deadline reasonable and warranted, defendants' second motion for an extension (Dkt. 55) is GRANTED.

(4) The Clerk is directed to send a copy of this Order to the parties and to the Honorable Robert S. Lasnik.

DATED this <u>4th</u> day of December, 2020.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge