UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN DARBY MCDONALD,

Plaintiff,

v.

SARA KARIKO, et al.,

Defendants,

CASE NO. C19-1998-RSL-MAT

REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiff proceeds pro se and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. He alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment and retaliation in violation of the First Amendment, and names as defendants the Chief Medical Officer for the Department of Corrections (DOC), a number of medical providers at Monroe Correctional Complex (MCC), and two MCC grievance coordinators. (Dkt. 12.)

Plaintiff filed a Motion for a Preliminary Injunction. (Dkt. 41.) He seeks pain medication to treat his cancer, access to legal materials, proper housing and diet, access to a pain specialist, and appointment of a dispute resolution specialist. Defendants oppose the motion. (Dkt. 48.)

Now, having considered the motion, response, documents filed in support and opposition (*see* Dkts. 45, 49, 53), and the remainder of the record, the Court recommends plaintiff's motion for a preliminary injunction (Dkt. 41) be DENIED.

BACKGROUND

Plaintiff entered DOC custody on his current conviction in 1997. (Dkt. 49, Ex. 1.) He is serving a sentence of life without parole and is designated a close custody inmate. (*Id*.) Plaintiff had Hepatitis C prior to 1997. (*See id*., Ex. 2 at 17.) Medical records during his custody show an extensive history of medical issues and treatment, including unsuccessful interferon treatment, successful treatment and clearing of the virus through medication in 2015, and periodic ultrasounds and CT scans of his abdomen. (*See id*. at 17-23.)

Plaintiff filed the current lawsuit in December 2019, while confined at MCC. (Dkt. 1.) Findings just prior and subsequent to the filing include, *inter alia*, a November 23, 2019 CT scan detecting a mass on his liver, a December 30, 2019 MRI showing no suspicious intrahepatic observation, and an April 20, 2020 MRCP showing a markedly increased mass on the liver. (Dkt. 49, Ex. 2 at 24-30.) On April 23, 2020, plaintiff had a consultation scheduled with an oncologist, but terminated the appointment after the doctor advised he would be managing plaintiff's suspected liver cancer, not his pain medication. (*Id*. at 31.) In a May 13, 2020 virtual consultation, an oncologist assessed probable hepatocellular carcinoma consistent with a medical history of hepatitis and found plaintiff was not a candidate for transplant given the tumor size and not an ideal surgical candidate given the severity of his cirrhosis. (*Id*. at 33.)

The DOC transferred plaintiff to Washington State Penitentiary (WSP) in Walla Walla, Washington in June 2020. (*Id*., Ex. 1 at 8.) In a July 13, 2020 consultation, an oncologist observed plaintiff's health had declined, including weight loss and increased right upper quadrant pain,

despite taking oxycodone and tramadol for pain. (*Id*. at 33, 36.) In late August 2020, the DOC transferred plaintiff to Airway Heights Corrections Center (AHCC) in Spokane, Washington based on medical needs. (*Id.*, Ex. 1 at 8.) Initially, and at the time he filed his motion for a preliminary injunction, plaintiff was confined in the segregation unit ("SMU") at AHCC (*see id*.), which does not have a close custody unit. *See* https://doc.wa.gov/corrections/incarceration/prisons/ahcc.htm (listing custody units).

Beginning early October 2020, AHCC housed plaintiff in its infirmary unit. (Dkt. 49, Ex. 1 at 4, 7.) He was being seen weekly by a non-defendant DOC provider, working with an oncologist for treatment of his cancer, and continued to receive pain medications. (*Id*., Ex. 2 at 43-56.) Providers recommended a nerve block, ablation, and Y90 procedures to address his pain, increased the dosing and altered the timing of prescribed oxycodone and oxycontin, and consulted with a pain specialist who suggested consideration of nonopioid therapies including gabapentin/ pregabalin and tricyclic antidepressants. (*Id*. at 43-46, 49, 54.) Records reflect consideration of a wide range of pain medications and that plaintiff's pain management had been difficult, with "agitated behavior especially in abusive language with nursing, recurrent refusals of medication and treatment, multiple kites with full page writings, and apparently his experience with pain management prior to [AHCC] and prior to diagnosis." (*Id*. at 48, 50-56.)

While housed in the AHCC infirmary, plaintiff could receive and send legal mail and request certain legal forms and materials via kite if needed for court-imposed deadlines (*id*., Ex. 3 at 64-65), but most of his property remained at WSP (*see* Dkt. 41 at 4). An early September 2020 request to promote plaintiff to medium custody was rescinded after he incurred a serious infraction due to an outburst with a medical provider. (*See* Dkt. 45 at 4.) As of November 12, 2020, plaintiff had returned to WSP. (Dkt. 57.)

DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"),

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect . . . principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

To obtain preliminary injunctive relief, plaintiff must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the alternative, "'if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoted sources omitted).

The purpose of preliminary injunctive relief is to preserve the positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is, however, "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoted source omitted; emphasis added by Supreme Court). *See also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

In this case, plaintiff's specific requests for preliminary injunctive relief include: (1) pain

medication to treat his cancer, "as is required by RCW statutes in the Death with Dignity Act"; (2) access to his legal materials, a computer, and legal paper; (3) "proper medical housing"; (4) "proper cancer diet"; (4) access to a pain specialist; and (5) appointment of a dispute resolution specialist. (Dkt. 41.) The Court, for the reasons set forth below, does not find plaintiff entitled to a preliminary injunction.

A. Conditions During AHCC SMU Confinement

Plaintiff made his requests for preliminary injunctive relief while housed in the SMU, the segregation unit at AHCC. He was subsequently transferred to the AHCC infirmary and is now back at WSP. Accordingly, plaintiff's request to be removed from the SMU was satisfied, as was, at least for a time, his request to be placed in medical housing. Plaintiff does not, moreover, provide sufficient specificity as to what would constitute "proper" medical housing, a "proper" diet, or as to the types and amounts of pain medication desired. Also, given his return to WSP, plaintiff is no longer separated from his personal legal materials or subject to the restrictions on access to other legal materials existing during his confinement at AHCC. Accordingly, plaintiff's request for preliminary injunctive relief as it relates to the conditions of his confinement during his AHCC confinement are now moot and subject to dismissal. *See generally Friends of The Earth, Inc. v. Bergland*, 576 F.2d 1377 (9th Cir. 1978) ("Where the activities sought to be enjoined have already occurred, . . . the action is moot.")

B. Conditions Following Transfers

It remains unclear whether plaintiff continues to seek the same preliminary injunctive relief following his transfer out of the AHCC SMU and back to WSP. The Court presumes for the purposes of considering his motion that plaintiff continues to seek some form of relief in relation to his medical treatment claim and possibly his allegation regarding legal access.

1. Legal access:

Plaintiff did not raise a legal access claim in his complaint and, with the sole exception of DOC Chief Medical Officer Dr. Sara Kariko, identified as defendants only MCC providers and grievance staff. Plaintiff cannot establish a likelihood of success on the merits of a claim that was not raised in and is unrelated to his complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 635-36 (9th Cir. 2015) (finding there must be a "relationship" and "sufficient nexus" between the injury and claims in the motion for injunctive relief and the conduct and claims in the underlying complaint: "The relationship . . . is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.' Absent that relationship or nexus, the district court lacks authority to grant the relief requested.") (internal citation to quoted source omitted). Even if plaintiff had raised a legal access claim, he fails to show he suffered any related harm. Instead, the docket in this matter demonstrates plaintiff has been able to promptly comply with deadlines pending both prior to and after filing his motion for a preliminary injunction. Plaintiff, for these reasons, is not entitled to preliminary injunctive relief in relation to legal access.

2. Medical treatment:

The Court applies a deliberate indifference standard in considering claims relating to medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010), *overruled in part on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016). A prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

A prison official may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and quotation marks omitted). The Court considers both the seriousness of the medical need and the nature of the response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). A "'serious' medical need exists if the failure to treat a . . . condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *Id.* (quoting *Estelle*, 429 U.S. at 104). A "defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *Id.* at 1060. The defendant "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care[.]" *Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Nor does a difference of opinion between an inmate and medical authorities regarding proper medical treatment give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). An inmate must show the course of treatment chosen "'was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Mere delay of treatment, standing alone, does not

suffice to state a claim of deliberate indifference; the inmate must show the delay led to further injury. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (1985) (citing *Estelle*, 429 U.S. at 106). *Accord Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1059-60.

The fact of plaintiff's serious medical needs is not in dispute. There is, however, doubt as to the likelihood of his success in establishing deliberate indifference. For example, and contrary to plaintiff's contentions, the evidence shows his receipt of medication and other treatment throughout the period relevant to his motion. To the extent plaintiff takes issue with the types and amounts of medication received and the fact his provider consulted with a pain specialist, rather than providing plaintiff an in-person appointment, such disagreement does not suffice by itself to show deliberate indifference. Nor is it clear precisely what plaintiff believes he should be provided with respect to medication, other treatment, and/or a "proper" diet and housing. He also appears to acknowledge he misunderstood and does not seek relief under Washington's Death with Dignity Act (*see* Dkt. 53 at 4-5), which provides a process for a terminally ill patient to pursue physician-assistant suicide. *See* Chapter 70.245 RCW.

If anything, the evidence submitted in relation to plaintiff's motion shows an ongoing effort to provide sufficient medication and treatment for plaintiff's pain, in accordance with his own tolerances on use and the restrictions necessary to the safety and security required for the institutions and units in which he is held. (*See, e.g.*, Dkt. 49, Ex. 2 at 48, 50 (reflecting plaintiff could not tolerate morphine or dilaudid, methadone had been effective in the past, tramadol and oxycontin had not been effective, oxycodone was most effective, NSAIDs were contraindicated, hydrocodone and fentanyl were not options, and tylenol would be appropriate but ineffective at this point, but may be considered for augmentation), and at 43-46, 49, 54 (recommendations for a nerve block, ablation, and Y90 procedures to address pain, increases in dosing and altered timing

of prescribed oxycodone and oxycontin, and consultation with a pain specialist who suggested consideration of nonopioid therapies including gabapentin/pregabalin and tricyclic antidepressants).) The records also reflect plaintiff's failure to comply with treatment and behavioral issues interfering with both his treatment and custody assignment.

Plaintiff further fails to identify a named defendant allegedly deliberately indifferent in relation to the injunctive relief requested. The events at issue in plaintiff's motion all took place after plaintiff's transfer away from MCC and plaintiff does not set forth facts showing the involvement of Dr. Kariko, the only named defendant not located at MCC. Both in this respect and in relation to his medical treatment as a general matter, plaintiff fails to show a likelihood of success on the merits.

Plaintiff likewise fails to show a likelihood of irreparable harm, that the public interest favors an injunction, or that the balance of equities tips in his favor. While plaintiff's condition is serious and appears likely to remain that way for the foreseeable future, he does not establish a risk of harm to be remedied by a preliminary injunction. The evidence shows the active, ongoing provision of medical treatment for plaintiff's condition by both DOC employees and outside providers, and efforts to address his concerns regarding the specific types and doses of medication and other treatment offered. Given the absence of evidence of inadequate care, the public interest and equities favor leaving the decisions regarding plaintiff's care to his medical providers. Plaintiff, as such, also fails to establish his entitlement to a preliminary injunction associated with his claims under the Eighth Amendment.[1]

---

[1] Plaintiff's motion contains a passing reference to the appointment of a dispute resolution specialist. (*See* Dkt. 41 at 6.) The undersigned, for the reasons stated above, does not find plaintiff entitled to this or any other preliminary injunctive relief requested. It should also be noted that defendants address the Court's pro bono mediation program in relation to plaintiff's reference, express concern that program would not succeed in light of a prior failed attempt to utilize it with plaintiff, *see McDonald v. Lauren*, C17-

CONCLUSION

Plaintiff fails to demonstrate his entitlement to the preliminary injunctive relief requested. Accordingly, his motion for a preliminary injunction (Dkt. 41) should be DENIED. A proposed Order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 4, 2021**.

DATED this 7th day of December, 2020.

Mary Alice Theiler
United States Magistrate Judge

5013-RBL (W.D. Wash. Aug. 8, 2017) (Dkt. 34), but indicate they would respond to any proper request to use the program if properly made by plaintiff in a separate motion.